**Hoeun YONG, Petitioner–Appellant,**

v.

**IMMIGRATION AND NATURAL-
IZATION SERVICE, Respon-
dent–Appellee.**

No. 99–17242.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 2000.

Filed April 11, 2000

Daniel Broderick and Meredith A. Linsky, Carolyn M. Wiggin, Assistant Federal Public Defenders, Sacramento, California, for the petitioner-appellant.

Alison Marie Igoe, United States Department of Justice, Washington, D.C., for the respondent-appellee.

Before: REINHARDT, THOMPSON, and T.G. NELSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Hoeun Yong filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by the Immigration and Naturalization Service ("INS"). Because the issues raised in Yong's petition were to be considered by this court in *Ma v. Reno*, 208 F.3d 815 (9th Cir. 20000), the district court stayed proceedings in Yong's case "pending resolution of the appeal" in *Ma*. Yong contends the district court abused its discretion when it ordered the stay. We agree and vacate the stay order. In doing so, we decline to reach the question of whether that order constituted an unconstitutional suspension of the writ of habeas corpus.

## FACTS

■ Yong was born in Cambodia in 1975. After fleeing that country to come to the United States, Yong became a lawful permanent resident. As a teenager, Yong began to have trouble with the law. In 1993, he was convicted of assault. During the following year, he was convicted of robbery. After serving his sentences for these crimes, Yong was transferred to INS custody. The INS then initiated deportation proceedings against him and, after a hearing, he was ordered deported. It is unclear, however, when Yong will be deported, if ever, because the United States and the Royal Government of Cambodia have not yet negotiated an agreement to address the deportation and repatriation of former Cambodian citizens. Nonetheless, Yong has remained in INS custody since July 1995, first in the Yuba County Jail and, more recently, in a half-way house.[1]

On August 13, 1998, Yong filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of California challenging his ongoing detention. He contends the INS lacks authority to detain him because, when he was originally taken into custody, the INS was only authorized to confine him for six months. 8 U.S.C. § 1252(a)(2)(A), (B), (c), (d) (1995). He further contends that the INS may not constitutionally rely, as the INS has claimed, on 8 U.S.C. § 1231(a)(6), enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), because IIRIRA was enacted after he was scheduled to be released. Finally, he argues that even if the INS was authorized to detain him under 8 U.S.C. § 1231(a)(6), it may not do so indefinitely without violating substantive due process. Specifically, he contends that he cannot be deported in the foreseeable fu-

ture, and as a result his continued incarceration no longer serves any legitimate governmental interest and is therefore unconstitutional.

Yong's habeas petition was referred to a magistrate judge who recommended that the writ be granted. The case then came before the district court. Although the district court issued a tentative order denying Yong's petition, it proposed staying the case and deferring a decision pending resolution of the appeal in *Ma*. Neither party had moved for a stay, and Yong opposed it. The district court, however, issued an order staying Yong's case, as well as five other habeas cases before it that raised similar issues, "pending resolution of the appeal" in *Ma*.

The district court justified the stay on three grounds. It first reasoned the stay was the most efficient course of action because the court otherwise would be required to revisit its decision after we issue our decision in *Ma*. The district court further asserted that the interests of the parties, particularly the INS, favored the stay. It pointed out that a stay would protect the INS from potentially unnecessary judicial interference and would conserve the INS's resources by saving it from defending another lawsuit over 8 U.S.C. § 1231(a)(6), which has been the subject of much litigation. The district court further reasoned the stay would not unduly burden Yong because even if the court were to grant Yong's petition, it would stay relief pending appeal. Finally, because at least one other district court judge within the Eastern District of California had granted relief in a case challenging detention under 8 U.S.C. § 1231(a)(6), the court reasoned that staying the case, rather than denying the peti-

1. This facility requires, among other things, submission to alcohol and drug testing upon request, compliance with a midnight curfew, and prior notice if a resident will be gone from the facility for three consecutive days or nights. Because the conditions imposed by the half-way house constitute a significant restraint upon Yong's liberty "not shared by

the public generally," we conclude Yong is still in custody for habeas purposes such that his case is not moot. *See Dow v. Circuit Court*, 995 F.2d 922, 923 (9th Cir.1993) (holding that a sentence of fourteen hours of attendance at an alcohol rehabilitation program renders someone "in custody").

tion as it was inclined to do, would avoid creating a split within the district.

Yong filed a petition in this court seeking a writ of mandamus to compel the district court to vacate its stay and rule on Yong's habeas petition. A motions panel denied the petition, concluding the stay order could be appealed directly. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 8–13, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This appeal followed.

## DISCUSSION

■■■ We review for abuse of discretion a district court's decision to stay proceedings. *See Clinton v. Jones*, 520 U.S. 681, 707, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); *United States v. Pend Oreille County Pub. Util. Dist. No. 1*, 135 F.3d 602, 614 (9th Cir.1998). This abuse of discretion standard, however, is somewhat less deferential than the flexible abuse of discretion standard applicable in other contexts. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 912 (9th Cir.1993); *see also Itel Corp. v. M/S Victoria U (Ex Pishtaz Iran)*, 710 F.2d 199, 202–03 (5th Cir.1983) ("We respect the trial court's inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants' and we give deference to the district court's judgment that the stay will avoid hardship and inequity, but we 'cannot abdicate our [role] ... to prevent the ossification of rights which attends inordinate delay.'") (citations and footnote omitted, alteration in original). When reviewing a stay order such as that issued in this case, we balance the length of the stay against the strength of the justification given for it. *See Hines v.*

*D'Artois*, 531 F.2d 726, 733 (5th Cir.1976); *cf. Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). If a stay is especially long or its term is indefinite, we require a greater showing to justify it. *See id.*

■■■ Here, although the stay has lasted only five months, its term is indefinite. Moreover, because the stay terminates upon the "resolution of the [*Ma*] appeal," if the Supreme Court should grant certiorari to review this court's decision in *Ma*, the stay could remain in effect for a lengthy period of time, perhaps for years if our decision in *Ma* is reversed and the case is remanded for further proceedings.[2] *See, e.g., Catholic Social Services, Inc. v. Meese*, 685 F.Supp. 1149 (E.D.Cal.1988); *rev'd, Catholic Social Services, Inc. v. Thornburgh*, 956 F.2d 914 (9th Cir.1992); *vacated, Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993), *on remand to, Catholic Social Services, Inc. v. Reno*, 996 F.2d 221 (9th Cir.1993). We examine the district court's stay order, therefore, in light of its probable substantial longevity.

### A.

■■■ The district court's primary justification for the stay was that it would conserve judicial resources. It is true that a trial court has the inherent authority to control its own docket and calendar. *See Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). We have explained:

[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which

**2.** Although it is true that once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority, *see McClellan v. Young*, 421 F.2d 690, 691 (6th Cir.1970), a single justice of the Supreme Court may stay the mandate of the Court of

Appeals pending an application for certiorari to the Supreme Court. *See* 28 U.S.C.A. § 2101(f); Sup.Ct. R. 23.2. We may also stay issuance of the mandate pending review by the Supreme Court under Rule 41(d) of the Federal Rules of Appellate Procedure. Therefore, it is quite possible that the appeal in *Ma* would not be "resolved" until long after we issue our decision in that case.

bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

*Leyva v. Certified Grocers of California Ltd.,* 593 F.2d 857, 863–64 (9th Cir.1979) (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). At the same time, habeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy. "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Ruby v. United States,* 341 F.2d 585, 587 (9th Cir.1965). Special solicitude is required because the writ is intended to be a " 'swift and imperative remedy in all cases of illegal restraint or confinement.' " *Fay v. Noia,* 372 U.S. 391, 400, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *see also Johnson v. Avery,* 393 U.S. 483, 485, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (noting that the Supreme Court has constantly emphasized the fundamental importance of the writ). Accordingly, the statute itself directs courts to give petitions for habeas corpus "special, preferential consideration to insure expeditious hearing and determination." *Van Buskirk v. Wilkinson,* 216 F.2d 735, 737–38 (9th Cir.1954).

 A district court is explicitly directed to "summarily hear and determine the facts, and dispose of [a habeas petition] as law and justice require." 28 U.S.C. § 2243; *see also id.* ("A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted ...."). It must hold a hearing within five days of the return of the writ, which must itself be within three days, absent good cause. *See id.* Courts have therefore issued writs of mandamus

to direct district courts to consider habeas petitions that have languished in their care. *See Johnson v. Rogers,* 917 F.2d 1283, 1285 (10th Cir.1990) (ordering the district court to decide habeas case that had been pending for fourteen months because "petitioner has established a clear and indisputable right to have his petition expeditiously heard and decided ..."); *McClellan v. Young,* 421 F.2d 690, 691 (6th Cir.1970); *cf. In re Blodgett,* 502 U.S. 236, 239–40, 112 S.Ct. 674, 116 L.Ed.2d 669 (1992). Consequently, although a short stay may be appropriate in a habeas case to await a determination in a parallel case in the same court, *see, e.g., Jeffries v. Wood,* 103 F.3d 827, 827 (9th Cir.1996) (en banc) (noting that a number of panels had stayed decisions pending resolution of a common question), or to allow a state to prepare for a retrial of a successful petitioner, *see Irvin v. Dowd,* 366 U.S. 717, 728–29, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Mahler v. Eby,* 264 U.S. 32, 46, 44 S.Ct. 283, 68 L.Ed. 549 (1924); *Capps v. Sullivan,* 13 F.3d 350, 352 (10th Cir.1993), we have never authorized, in the interests of judicial economy, an indefinite, potentially lengthy stay in a habeas case.

Nor do we now. "The writ of habeas corpus, challenging illegality of detention, is reduced to a sham if ... trial courts do not act within a reasonable time." *Jones v. Shell,* 572 F.2d 1278, 1280 (8th Cir.1978) (footnote omitted). A long stay also threatens to create the perception that courts are more concerned with efficient trial management than with the vindication of constitutional rights.

 We acknowledge that the district court was in an unenviable position. It was faced with a number of petitions in an evolving area of law and knew that, however it ruled, it might be required to revisit its decision if its reasoning did not comport with our ruling in *Ma.* The stay it crafted, however, placed a significant burden on Yong by delaying, potentially for years, any progress on his petition. Consequently, although considerations of judicial econ-

omy are appropriate, they cannot justify the indefinite, and potentially lengthy, stay imposed here. *See Johnson*, 917 F.2d at 1285 (holding that a crowded docket, without more, is insufficient to justify lengthy delay).

### B.

The district court next reasoned the stay promoted the INS's interests without unduly burdening Yong's. We disagree. The stay denied Yong a timely resolution of his habeas petition. *See* 28 U.S.C. § 2243. Had the district court rendered a decision on his habeas petition, instead of issuing the stay, Yong could have appealed that final decision. As it is, having failed in his application for a writ of mandate, Yong's only alternative was to pursue this appeal of the stay order. Unless the stay order is vacated, Yong may be required to wait a substantial period of time before the issues he raises in his habeas petition are resolved, including the question of whether IIRIRA applies to him—an issue not raised in the *Ma* appeal.

These significant burdens are not outweighed by any substantial benefit afforded to the INS by the stay. Although the stay may reduce the number of cases that the INS is required to litigate, the INS's workload is only fractionally decreased because the stay only affects cases before a single district court judge in a single judicial district. Given the number of cases filed nationally that address the constitutionality of 8 U.S.C. § 1231(a)(6), we cannot conclude that the stay conserves the INS's resources in any meaningful way. Similarly, we reject the notion that the stay protects the affairs of the INS against interference. Cases involving the legality of detentions under 8 U.S.C. § 1231(a)(6) continue to be decided with increasing frequency. *See, e.g., Ho v. Greene*, 204 F.3d 1045 (10th Cir.2000); *Zadvydas v. Underdown*, 185 F.3d 279 (5th Cir.1999); *In re Indefinite Detention Cases*, 82 F.Supp.2d 1098 (C.D.Cal.2000); *Sok v. INS*, 67 F.Supp.2d 1166 (E.D.Cal.1999). Put simply, the stay does not advance the INS's interests in any significant way, but it causes Yong substantial prejudice.

### C.

The district court finally reasoned that the stay was warranted as a means to prevent a split among decisions emanating from the Eastern District of California. As Yong points out, however, the stay has not promoted uniformity in that district. Because a stay order only affects cases before the district judge issuing the stay, the order is not binding on any other district judge. Indeed, at least one other district judge in the Eastern District of California has heard a similar habeas case and has decided it contrary to the tentative decision of the district judge in the present case. *See Sok*, 67 F.Supp.2d at 1166 (granting petition). Thus, notwithstanding the stay, *petitions filed within the Eastern District challenging the constitutionality of detentions pursuant to 8 U.S.C. § 1231(a)(6) may be granted, denied, or stayed*, depending on what district judge hears the case.

### CONCLUSION

We conclude the district court abused its discretion by declining to decide Yong's habeas petition, and instead staying his case "pending resolution of the appeal" in *Ma*. The district court's stay order, therefore, is VACATED and the case is REMANDED for further proceedings.

VACATED and REMANDED.